# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-70020

United States Court of Appeals
Fifth Circuit
**FILED**
May 10, 2018
Lyle W. Cayce
Clerk

BLAINE KEITH MILAM,

>Petitioner-Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

>Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:13-CV-545

Before ELROD, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

In 2010, Petitioner Blaine Keith Milam was convicted for the capital murder of thirteen-month-old Amora Bain Carson and sentenced to death. His direct appeal and state collateral proceedings were unsuccessful, as was his 28 U.S.C. § 2254 petition for a writ of habeas corpus in the district court. He now applies for a certificate of appealability (COA), seeking to appeal the district court's denial of his petition. For the reasons that follow, we deny the application.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

I

We provide only a brief summary of the underlying facts here. We discuss the specific facts pertinent to each of the relevant COA issues in the appropriate sections below.

Milam was charged with capital murder for the death of Amora Bain Carson. During the guilt phase of his jury trial, the State's evidence showed that Amora died from homicidal violence, due to multiple blunt-force injuries and possible strangulation. A search of Milam's trailer, the scene of the murder, revealed blood-spatter stains consistent with blunt-force trauma, blood-stained bedding and baby clothes, blood-stained baby diapers and wipes, a tube of Astroglide lubricant, and a pair of jeans with blood stains on the lap. DNA testing showed that the blood on these items was Amora's. Milam's sister visited Milam in jail a few days after the murder, and that night she told her aunt that she needed to get to Milam's trailer because Milam told her to get evidence out from underneath it. Milam's aunt called the police, who immediately obtained a search warrant and, in a search underneath the trailer, discovered a pipe wrench inside a clear plastic bag that had been shoved down a hole in the floor of the master bathroom. Forensic analysis revealed components of Astroglide on the pipe wrench, the diaper Amora had been wearing, and the diaper and wipes collected from the trailer. The State also proffered testimony from Shirley Broyles, a nurse at the Rusk County Jail, who testified that Milam told her, "I'm going to confess. I did it. But Ms. Shirley, the Blaine you know did not do this. My dad told me to be a man, and I've been reading my Bible. Please tell Jesseca [Amora's mother] that I love her." *See generally Milam v. State*, No. 76,379, 2012 WL 1868458, at *1–6 (Tex. Crim. App. May 23, 2012). The jury convicted Milam of capital murder, in violation of Texas Penal Code section 19.03(a)(8).

After a separate punishment hearing, the jury voted in favor of the death

2

penalty, and the trial court sentenced Milam to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence on direct appeal. Milam did not file a petition for a writ of certiorari.

Milam filed an application for writ of habeas corpus in State court on May 21, 2012. On September 11, 2013, the Texas Court of Criminal Appeals adopted the trial court's recommended findings of fact and conclusions of law and denied state habeas relief. Milam then filed a petition for habeas relief in federal district court. On August 16, 2017, the district court denied the petition on all of Milam's twenty-one claims (some with multiple subclaims) and denied Milam a certificate of appealability.

Milam now seeks a COA in this court on six claims: (1) trial counsel was ineffective for failing to request a jury instruction during the punishment phase on voluntary intoxication as mitigation; (2) the trial court erred in failing to include a jury instruction on voluntary intoxication; (3) appellate counsel was ineffective for failing to raise, in a motion for new trial or on direct appeal, the ineffectiveness of trial counsel for failing to request and the trial court's failure to include a jury instruction on voluntary intoxication; (4) state habeas counsel was ineffective for failing to raise the first three claims in a state habeas application; (5) appellate and state habeas counsel were ineffective for failing to assert a sufficiency of the evidence claim on the issue of whether Milam was intellectually disabled; and (6) appellate and state habeas counsel were ineffective for failing to allege claims on appeal that Milam's death sentence violates *Roper v. Simmons*, 543 U.S. 551 (2005), because the evidence demonstrated that he was functioning on an emotional level of a person between eight and sixteen years old.

## II

Federal habeas proceedings are subject to the rules prescribed by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Matamoros v. Stephens*,

783 F.3d 212, 215 (5th Cir. 2015); *see* 28 U.S.C. § 2254. Under AEDPA, a certificate of appealability is a jurisdictional prerequisite to appealing the denial of habeas relief. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). A COA may issue upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, —, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When . . . the district court denies relief on procedural grounds, the petitioner seeking a COA must show both 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).Whatever the basis for the denial, the court must bear in mind that "[w]here the petitioner faces the death penalty, 'any doubts as to whether a COA should issue must be resolved' in the petitioner's favor.'" *Allen v. Stephens*, 805 F.3d 617, 625 (5th Cir. 2015) (quoting *Medellin v. Dretke*, 371 F.3d 270, 275 (5th Cir. 2004)), *abrogated on other grounds by Ayestas v. Davis*, 584 U.S. —, 138 S. Ct. 1080 (2018).

"In assessing whether the district court's rejection of [a petitioner's] claims is debatable, we consider them under the deference AEDPA mandates federal courts show their state peers." *Prystash v. Davis*, 854 F.3d 830, 835 (5th Cir. 2017). "A federal court should not grant habeas relief unless the petitioner has exhausted the remedies available in state court for reviewing the claim." *Id.*; *see also* 28 U.S.C. § 2254(b). If the state court has adjudicated a petitioner's habeas claim on the merits, a federal court may not grant habeas relief unless the state

4

court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). Regarding subsection (1), "[a] state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court[,] . . . if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts," *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir. 2010), or "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases," *Bell v. Cone*, 535 U.S. 685, 694 (2002). And "[a] state court's decision constitutes an unreasonable application of clearly established federal law if it is 'objectively unreasonable.'" *Gray*, 616 F.3d at 439. "When, as here, a habeas petitioner's claim has been adjudicated on the merits in state court, review under § 2254(d)(1) is limited to the record that was before the state court." *Loden v. McCarty*, 778 F.3d 484, 493 (5th Cir. 2015) (citation and internal quotation marks omitted). Regarding subsection (2), a federal habeas petitioner challenging the factual basis for a prior state court decision is successful only if he rebuts the "presumption of correctness" of the state court's factual findings "by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)).

"This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). For good reason: "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction

through appeal." *Richter*, 562 U.S. at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)); *see also Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007) ("We have repeatedly admonished that we do not sit as a super state supreme court on a habeas corpus proceeding to review error under state law." (citation omitted)).

### III

The district court and both parties discuss Milam's first four claims together, so we do so, as well. Milam principally contends that trial counsel was ineffective for presenting evidence regarding his drug use and "drug induced psychosis" at the time of the crime, but then failing properly to seek a jury instruction on voluntary intoxication as mitigation at the punishment phase. The other three claims grow out of claim one: he argues that the trial court failed to include a requested voluntary intoxication instruction, that appellate counsel was ineffective for failing to raise the first two issues in a motion for a new trial or on direct appeal, and that state habeas counsel was ineffective for failing to raise any of the previous three issues on collateral review.

As the district court noted, Milam concedes that he exhausted none of these claims. "As a rule, a state prisoner's habeas claims may not be entertained by a federal court 'when (1) a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds.'" *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted)). But Milam argues that the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), permits him to raise them on federal habeas review. In *Martinez*, the Court "held that a petitioner may establish cause to excuse a procedural default as to an ineffective-assistance-of-trial-counsel claim by showing that (1) his state habeas counsel was constitutionally deficient in failing to include the claim in his first

6

state habeas application; and (2) the underlying ineffective-assistance-of-trial-counsel claim is 'substantial.'" *Reed v. Stephens*, 739 F.3d 753, 774 (5th Cir. 2014) (quoting *Martinez*, 566 U.S. at 13–14). A claim is "substantial" where the petitioner "demonstrate[s] that the claim has some merit,'" but a claim is "insubstantial" where the claim "does not have any merit" or is "wholly without factual support." *Martinez,* 566 U.S. at 14, 16; *see also generally Trevino v. Thaler*, 569 U.S. 413 (2013) (applying *Martinez* to the Texas procedural system).

So for our purposes, as to Milam's first claim, we must decide whether jurists of reason could debate whether his ineffective-assistance-of-trial-counsel claim has some merit. The clearly established federal law governing ineffective assistance claims is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland,* a petitioner must first prove that counsel's performance was deficient: "[t]he benchmark for judging any claim on ineffectiveness must be whether counsel's conduct **so undermined** the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686 (emphasis added). Counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and a petitioner cannot overcome that presumption unless he shows that counsel failed to act "reasonabl[y] considering all the circumstances." *Id.* at 688, 690. The petitioner must also prove prejudice—"that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 691–92, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.* at 694, and '[t]he likelihood of a different result must be substantial, not just conceivable," *Richter*, 562 U.S. at 112. Review of the state court's decision on ineffective assistance is "doubly deferential"—the court "take[s] a 'highly deferential' look at counsel's performance, through the 'deferential lens of § 2254(d).'" *Pinholster,* 563 U.S. at 190 (citation omitted) (quoting *Strickland*,

7

466 U.S. at 689, and *Knowles v. Mirzayance*, 556 U.S. 111, 121 n.2, 123 (2009)). We need not evaluate both prongs of the test if a petitioner fails to satisfy either one. *Strickland*, 466 U.S. at 697.

We agree with the district court that Milam has failed to show that his ineffective-assistance-of-trial-counsel claim has any merit sufficient to overcome the *Martinez* hurdle, and thus, he has failed to make the showing of debatability required for issuance of a COA. The district court comprehensively detailed trial counsel's actions and appropriately concluded that those actions did not fall below the standard set by *Strickland*. Trial counsel filed a pretrial motion addressing Texas Penal Code § 8.04—which provides that "temporary insanity caused by intoxication" can be considered in mitigation of punishment—and informed the trial court that he anticipated introducing evidence during the punishment phase that Milam was voluntarily intoxicated at the time of the offense. Trial counsel asked for an instruction on voluntary intoxication, but the court carried the motion, along with fourteen others, until a later date.

Then, during trial, trial counsel proffered several witnesses to testify regarding Milam's history of drug use and his "drug induced psychosis" on the night of the murder. After the close of punishment evidence, trial counsel stated to the court, "You had carried a couple of motions that are appropriate to have you rule on at this time," and though he did not specifically mention the motion seeking the voluntary intoxication instruction, he mentioned a motion regarding Milam's mental age and also referenced "other arguments made and set forth in our motion that you carried." The trial court denied the motion and did not give the instruction.

Despite this denial, one of Milam's trial attorneys, during closing argument, still urged the jury to consider the voluntary intoxication evidence as mitigating. Counsel mentioned the experts' testimony on the effects of methamphetamine, one expert's opinion that the facts of the crime were "insanity,"

8

and argued that there were mitigating circumstances which would justify imposition of a life sentence rather than death, Milam's other trial attorney argued that Milam was prone to drug addiction because of family history of addiction and told the jury, "You know, we talk about intoxication or drug use is not a defense to the ultimate crime [sic]. It is a defense in mitigation to whether or not you should kill somebody for what happened." During punishment-stage jury instructions, the court instructed the jurors to "consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness." And the jury was asked in Special Issue Number Four whether "there is a sufficient mitigating circumstance or circumstances to warrant a sentence of life imprisonment rather than a death sentence be imposed."

The district court concluded, based on this record, that "[c]ounsel's representation cannot be viewed as ineffective simply because the trial court denied the motion," "counsel appropriately pursued this issue and presented it to the jury," and "[c]ounsel's representation did not fall below an objective standard of reasonableness." We agree with the district court's conclusion and find that Milam has failed to show it is debatable whether he satisfies the deficiency prong of *Strickland*. Milam faults his counsel for, in essence, not explicitly bringing up again the motion for a jury instruction on voluntary intoxication. But despite those specific words not being used, it cannot be said that trial counsel did not emphasize repeatedly that the jury consider voluntary intoxication evidence as mitigation. We therefore find that Milam's first claim is insubstantial, does not satisfy *Martinez*, and does not warrant a COA.

We also agree with the district court's conclusions regarding Milam's claims two through four. As to claim two, *Martinez/Trevino* allows circumvention of a procedural bar only for claims of ineffective assistance of trial counsel, *see, e.g.*, *Clark v. Davis*, 850 F.3d 770, 780–81 (5th Cir. 2017), not a claim that the trial court erred by failing to give a requested jury instruction. As to claim

9

Case: 17-70020    Document: 00514467256    Page: 10    Date Filed: 05/10/2018
Case 4:13-cv-00545-JDK   Document 39   Filed 05/10/18   Page 10 of 13 PageID #: 8078

No. 17-70020

three, the Supreme Court has held that *Martinez* does not extend to ineffective assistance of appellate counsel claims. *Davila v. Davis*, 582 U.S. —, 137 S. Ct. 2058, 2065 (2017). And as to claim four, *Martinez* "did not alter our rule that . . . '[b]ecause appointment of counsel on state habeas is not constitutionally required, any error committed by an attorney in such a proceeding cannot be constitutionally ineffective.'" *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir. 2013) (quoting *Fairman v. Anderson*, 188 F.3d 635, 643 (5th Cir. 1999) (internal quotation marks omitted)); *see also Martinez*, 566 U.S. at 8 (noting "the general rule that there is no constitutional right to counsel in collateral proceedings"). Thus, no standalone claim for ineffective assistance of state habeas counsel is permitted under *Martinez*. Milam fails to show an entitlement to a COA on any of these three claims.

## IV

In claim five, Milam contends that the evidence at trial was sufficient to demonstrate that he was intellectually disabled. And in claim six, he argues that the evidence at trial was sufficient to demonstrate that he was functioning at somewhere between an eight- and sixteen-year-old level, so his death sentence contravenes the Supreme Court's holding in *Roper v. Simmons*, 543 U.S. 551 (2005), that persons below the age of eighteen cannot be executed. On these bases, in both claims, he argues that appellate counsel was ineffective for not pursuing this claim on appeal, and that habeas counsel was ineffective for not bringing a claim of ineffective assistance of appellate counsel. Milam concedes that these claims are also unexhausted.

Both claims five and six fail in part for the same reasons claims three and four, respectively, failed: *Martinez* permits neither an ineffective assistance of appellate counsel claim nor a standalone claim for ineffective assistance of state habeas counsel. *See Davila*, 137 S. Ct. at 2065; *In re Sepulvado*, 707 F.3d at 554. Reasonable jurists could not debate these findings.

Milam could theoretically bring claim five under *Martinez* if he could show, as a threshold matter, a substantial claim that his trial counsel was ineffective on this issue. But in his application, he makes but a single reference to trial counsel in his discussion of claim five: "Trial counsel failed to challenge the use of [one of the State expert's intelligence tests] and was thus ineffective." This is not enough. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel." (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000))).

And specifically as to claim six, the district court was also correct that the question is closed in this circuit whether executing a defendant with a developmental age below eighteen violates the Constitution—it does not. *See United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014) ("The *Roper* Court did not hold that the Eighth Amendment prohibits a death sentence for an offender with a 'mental age' of less than 18." (alterations removed) (quoting *In re Garner*, 612 F.3d 533, 535–36 (6th Cir. 2010))). Milam has not established an entitlement to a COA on either of these two claims.

## V

Finally, Milam faults the district court for failing to order an evidentiary hearing on his habeas petition. A hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A district court's decision not to hold an evidentiary hearing is reviewed for abuse of discretion. *Richards v. Quarterman*, 566 F.3d 553, 562 (5th Cir. 2009). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Murra*, 879 F.3d 669, 678 (5th Cir. 2018) (quoting *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013)). In light

11

Case: 17-70020     Document: 00514467256     Page: 12     Date Filed: 05/10/2018
Case 4:13-cv-00545-JDK   Document 39   Filed 05/10/18   Page 12 of 13 PageID #: 8080

No. 17-70020

of the foregoing discussion, we conclude that reasonable jurists could not disagree with the district court's decision not to *sua sponte* order an evidentiary hearing. No COA on this issue is warranted.

\* \* \*

We conclude that reasonable jurists could not disagree with the district court's disposition of any of Petitioner's claims. Accordingly, we **DENY** in full Petitioner's application for a certificate of appealability.

Certified as a true copy and issued
as the mandate on **May 10, 2018**

Attest:
*Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

## *United States Court of Appeals*
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

May 10, 2018

Mr. David O'Toole
Eastern District of Texas, Sherman
101 E. Pecan Street
Federal Building
Room 216
Sherman, TX 75090-0000

    No. 17-70020   Blaine Milam v. Lorie Davis, Director
                           USDC No. 4:13-CV-545

Dear Mr. O'Toole,

Enclosed is a certified copy of an opinion-order entered on May 10, 2018. We have closed the case in this court.

We are not forwarding the record on appeal as it is an electronic copy.

                                       Sincerely,

                                       LYLE W. CAYCE, Clerk

                                       By: _____
                                       Erica A. Benoit, Deputy Clerk

Enclosure(s)

cc:  Mr. Donald Lee Bailey
     Ms. Tomee Morgan Heining